UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TESSIE CONTE and JAMES CONTE,

                              Plaintiffs,

                                                    CIVIL CASE NO. 05-40384

v.

SONIC-PLYMOUTH CADILLAC, INC. and              HONORABLE PAUL V. GADOLA
CHASE AUTO FINANCE CORP.,                      U.S. DISTRICT COURT

                              Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants' motion for summary judgment. For the reasons below, the

Court grants Defendants' motion for summary judgment and dismisses this case with prejudice.

**I.      Background**

This case arises out of the sale of a 1997 Bentley automobile to Plaintiffs James and Tessie

Conte by Defendant Sonic-Plymouth Cadillac, Inc. d/b/a/ Don Massey Cadillac ("DMC"). Before

the events at issue, Mr. Conte had purchased or leased approximately 20 vehicles from DMC. Mr.

Conte allegedly had regular discussions with a DMC salesman, Rich Detata, regarding the possible

purchase of a used Bentley. Detata located a 1997 Bentley Brooklands with a wholesaler in Florida

and informed Mr. Conte that the vehicle was available at a purchase price of $65,000. Plaintiffs

allege that DMC promised that the automobile was in perfect condition and represented to Plaintiffs

that it came with a warranty.

The parties differ on several significant facts regarding the financing and sale of the Bentley.

At first, the Bentley was to be financed under only Mr. Conte's name. DMC alleges that Mr.

Conte's credit was not good enough in order to obtain financing, either by himself or as a co-applicant with Mrs. Conte. DMC alleges that Plaintiffs then agreed to obtain financing for the Bentley through Mrs. Conte individually. DMC alleges that on the date of the sale, Detata went to Mrs. Conte's place of employment, where Mrs. Conte signed all the relevant paperwork, thereby purchasing the Bentley. One of the documents signed by Mrs. Conte was the Buyer's Guide for the Bentley, which stated in large, bold capital letters that the sale of the vehicle was "AS IS - NO WARRANTY."

Plaintiffs contest this version of the facts and allege that it was decided at first that the Bentley was to be financed and titled in Mr. Conte's name, and that later, DMC said that Mrs. Conte might be needed as a co-signer. Plaintiffs allege that DMC never gave Mr. Conte a written or verbal adverse action notice when DMC determined that Mr. Conte would not be a party to the financing of the Bentley. On the day of the sale, Plaintiffs claim that Detata went to Mrs. Conte's place of employment, misrepresented to her the nature of the sale and financing of the Bentley, failed to correct Mrs. Conte's mistaken impressions about the sale, and covered up important sections of the paperwork, thereby inducing Mrs. Conte to sign the relevant paperwork without a proper understanding of the nature of the sale. Plaintiffs allege that Mrs. Conte signed the reverse side of the Buyer's Guide and never saw the "AS IS - NO WARRANTY" language. Plaintiffs claim that they believed that the Bentley came with a warranty.

After Mrs. Conte signed the papers, Mr. Conte went to pick up the Bentley and discovered that the vehicle was in very poor condition and did not function properly. Plaintiffs allege that they would never have agreed to buy the vehicle if they knew that it did not come with a warranty or that

Mr. Conte would not be on the title or finance agreement.

Plaintiffs subsequently filed a complaint against Defendants alleging thirteen counts, ten of which were based in state law. This Court declined to exercise supplemental jurisdiction over the state claims, but retained Counts I through III, which were those counts alleging violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*; the Federal Vehicle Cost Savings and Information Act ("FVCSIA"), 49 U.S.C. § 32701 *et seq.*; and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

## II.    Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D.

Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

### III. Analysis

#### A. Plaintiffs' ECOA claim

Plaintiffs claim that Defendants violated ECOA by failing to provide Mr. Conte with notice that his credit application had been denied. Plaintiffs argue that DMC was a creditor for ECOA purposes and was required to provide notice of adverse actions.

Even when taking all the facts in the light most favorable to Plaintiff, the Court disagrees with Plaintiffs' argument. DMC was not required to provide notice to Plaintiffs of adverse credit actions because it was not "a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit." 12 C.F.R. § 202.2(l). DMC is only "a person who, in the ordinary course of business, regularly refers applicants or prospective applicants to creditors, or selects or offers to select creditors to whom requests for credit may be made," and as such, DMC is prohibited from discouraging or discriminating a credit applicant. *Id.*; *see* 24 C.F.R. § 202.4. Here, there are no allegations that DMC discouraged or discriminated against Mr. Conte's credit application. Since DMC was not required to provide notice to Mr. Conte when his credit application was denied, DMC did not violate ECOA. Accordingly, Defendants are entitled to summary judgment on this claim.

#### B. Plaintiffs' FVCSIA claim

Plaintiffs claim that Defendants violated FVCSIA by forging Mrs. Conte's signature on the certificate of title. The Court disagrees with Plaintiffs' argument and finds that Plaintiffs' FVCSIA claim should be dismissed as a matter of law. Even assuming all the facts in the light most favorable to Plaintiff, including the fact that Defendants forged Mrs. Conte's signature on the certificate of title, Plaintiffs have failed to allege a violation of FVCSIA. The purpose of the FVCSIA is to prohibit tampering with odometers and to protect purchasers of vehicles by requiring the disclosure of a vehicle's mileage. *See* 49 U.S.C. § 32701; 49 C.F.R. § 580.2. It is undisputed that the vehicle's mileage was disclosed to Plaintiffs. There is no question that Mrs. Conte signed the Odometer Disclosure Statement, which accurately reflected the actual mileage of the vehicle. *See* Exh. E, Reply [docket entry #23]. There is no allegation that Defendants tampered with the odometer of the vehicle. Whether or not Defendants forged the signature of Plaintiffs on the certificate of title is irrelevant to a claim under the FVCSIA. Consquently, as a matter of law, the Court finds that there is no violation of FVCSIA, and Defendants are entitled to dismissal of this claim.

### C. Plaintiffs' Magnuson-Moss Warranty Act claim

Plaintiffs claim that Defendants breached the Magnuson-Moss Warranty Act. Considering the facts in the light most favorable to Plaintiffs, Defendants are entitled to summary judgment on Plaintiffs' claim. It is undisputed that Mrs. Conte signed the Statement of Vehicle Sale, which stated that DMC "expressly disclaims all warranties either express or implied." *See* Exh. C, Reply [docket entry #23]. It is also undisputed that Mrs. Conte signed the Buyer's Guide, which states in large, bold letters that the sale is "AS IS - NO WARRANTY." *See* Exh. D, Reply [docket entry #23]. Plaintiffs argue that these disclaimers were not conspicuous to Mrs. Conte because Detata flipped

through the sales documents rapidly and because Mrs. Conte did not see the front of the Buyer's Guide which she signed on the back. Plaintiffs also argue that Detata made oral representations to Plaintiffs that the vehicle was in excellent condition and that it came with a warranty.

Even assuming that Defendants made multiple oral misrepresentations to Plaintiffs about the Bentley being in good condition and having a warranty, there is no question that Mrs. Conte signed the Statement of Vehicle Sale just below a disclaimer disclaiming all warranties either express or implied. Moreover, there is no question that Mrs. Conte signed the Buyer's Guide, which is a one-page document with the phrase "AS IS - NO WARRANTY" in extremely conspicuous lettering. The language of these documents is clear and unambiguous. "It is a basic rule of construction that a court cannot change the terms of an agreement." *Hy King Assocs., Inc. v. Versatech Mfg. Indus., Inc.*, 826 F. Supp. 231, 239 (E.D. Mich. 1993) (Gadola, J.). "If the contract is plain and unequivocal in its terms he is ordinarily bound thereby. It is the duty of every contracting party to learn and know its contents before he signs and delivers it. To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made, or to allow him to admit that he signed it but did not read it or know its stipulations, would absolutely destroy the value of all contracts." *Collier v. Stebbins*, 210 N.W. 264, 267 (Mich. 1926). Plaintiffs offer no caselaw in support of their position that a failure to read the clear terms of a contract or a parties' previous representations about a contract, render the terms of the contract inoperative.

Plaintiffs attempt to create a Magnuson-Moss Warranty Act issue by pointing to the fact that Defendants did not post the Buyer's Guide in the window of the vehicle as required by 16 C.F.R. § 455.2. This argument is meritless. The Bentley was not placed on a lot by Defendants and

presented to the public for sale.  Instead, it was specifically ordered directly from a third party for Plaintiffs.  In addition, there is no question that Mrs. Conte signed a Customer Statement that authorized the removal of the Buyer's Guide.  *See* Exh. I, Reply [docket entry #23].  Defendants' failure to have the Buyer's Guide posted in the window of the vehicle does not create a violation of the Magnuson-Moss Warranty Act, and as a matter of law, Defendants are entitled to dismissal of this claim.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [docket entry #19] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action, Civil Case No. 05-40384, is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

Dated:   March 20, 2008                           s/Paul V. Gadola
                                                  HONORABLE PAUL V. GADOLA
                                                  UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   March 20, 2008   , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
    Bryan K. Proctor; Daniel N. Sharkey; Adam G. Taub                          , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____.


                                                  s/Ruth A. Brissaud
                                                  Ruth A. Brissaud, Case Manager
                                                  (810) 341-7845